JAMES L. RUBEL
V.
JOHN G. ELLIOTT.

*Attorney and Client—Contract for Services—Champerty—*Ultra Vires—
Remittitur.

Under a special contract to pay an attorney a certain contingent fee for
successfully defending a suit and a *per diem* for time employed in case of
abandonment by the client, upon such abandonment the recovery of the *per
diem* allowance can not exceed the amount of the contingent fee.

[Opinion filed January 16, 1889.]

APPEAL from the County Court of Cook County; the Hon.
RICHARD PRENDERGAST, Judge, presiding.

Messrs. TENNEY, BASHFORD & TENNEY, for appellant.

In this country a corporation can not become a stock-
holder in another corporation, unless by powers specifically
granted, especially if it be for the purpose of controlling or
affecting the management of the other corporation. Green's
Brice's *Ultra Vires* (2d Ed.), p. 91 (note B), and cases there
cited.

A corporation may, under certain circumstances, purchase
its own stock, if it has a surplus that can be used for that pur-
pose, or if it is necessary to save itself from loss. It can not
do so to the prejudice of its creditors. Clapp v. Peterson, 104
Ill. 26.

The right to purchase and hold stock in another corpora-
tion is a very different question. If a corporation can become
a subscriber to the stock of another corporation, for the pur-
pose of controlling its management, the limitations hitherto
imposed on corporate powers are swept away, and the rights
of stockholders and creditors, and of the public, are made sub-
ject to the cupidity or caprice of a majority of one in a board
of directors.

Rubel v. Elliott.

An agreement entered into before the new company was formed, and made in contemplation of its organization, would not be binding upon it, and could not be enforced (Gent v. Man. & Mer. Mut. Ins. Co., 107 Ill. 652), and consequently such a contract would furnish no consideration for the engagements of the W. O. Tyler Paper Co., and they were *ultra vires*, as Elliott must have known.

The W. O. Tyler Paper Company having no valid interest in the patent right, its agreement with Elliott to pay the expenses of the litigation with the Hammerschlag Manufacturing Company in the United States Court was clearly maintenous and champertous, and the court will not enforce his claim for services against the corporation. McGoon v. Ankeny, 11 Ill. 558; Norton v. Tuttle, 60 Ill. 130; Gilbert v. Holmes, 64 Ill. 554; Walsh v. Shumway, 65 Ill. 471; Thompson v. Reynolds, 73 Ill. 11; Coleman v. Billings, 89 Ill. 183.

The contract in the first clause provides for the payment of $3,000 absolutely for the services of the attorney by the company; the second clause provides for the payment of $50 a day for services if the company abandons the suit; the third clause expressly stipulates that the attorney shall have no claim upon the aforesaid $3,000, except as provided for in clause two of this agreement, until a favorable decision shall have been rendered. It is clear, from these provisions, that the sum of $3,000 was to be the limit of the attorney's charges in any event, and that in case the suit was abandoned he should be paid at the rate of $50 per day, not exceeding that sum. It is absurd to suppose that the Tyler Paper Company stipulated to pay a greater sum for a portion of the attorney's services which had availed them nothing than his entire services were agreed to be worth in case he succeeded in the litigation. There is no ground for the contention that the greater sum was intended for a penalty. The contract does not warrant any such construction. If that had been in contemplation, the rights of the company would have been guarded by some provision for abandoning the suit at different stages of the litigation. Were not the heavy disbursements paid by the company, aggregating over $10,000, none of which

could be recovered unless the litigation proved successful, a sufficient inducement for it to vigorously prosecute the suit as long as there was any reasonable ground to hope for a favorable issue?

Weeks on Attorney at Law, referring to the subject of compensation by special agreement, says (p. 580): "If the special agreement is rescinded or is void for champerty, the attorney may recover on a *quantum meruit* for his services, but he is limited in such suit to the valuation he himself attaches to his services in the special agreement."

Mr. FRANK A. MOORE, for appellee.

The object of defending the suit was to break down the Hammerschlag patent; the Bancroft patent could not be established in that suit. If the defendants succeeded, then the trade would be freed from the monopoly created by the Hammerschlag patent, and that process of manufacturing would be open to the world; and the Tyler Paper Co. had, in common with the entire paper trade, that interest in the subject-matter of the litigation, viz., to destroy that monopoly— a legitimate interest, and a sufficient interest to justify it in taking an active part in the defense of the pending litigation, independent of its contract with Bancroft, and of any rights acquired under that contract, and a benefit and advantage which it would enjoy though its contract with Bancroft might be void, and though the corporation contemplated by that contract should never be formed.

In this connection, and also as bearing on the validity of the Bancroft contract, we cite Plating Co. v. Farquharson, L. R. 18, Ch. Div. 49.

The principle of this decision establishes that any member of a trade subject to a patent monopoly has an interest in any suit involving the validity of that patent, and may legitimately aid in carrying on the litigation though not himself a party; and we say, therefore, that the Tyler Paper Co. had a sufficient interest to support its contract with appellee for his services, wholly irrespective of the validity of the Bancroft contract.

Rubel v. Elliott.

Further, appellee's right to recover is in no way dependent upon the validity of the Bancroft contract. He was not a party to that contract; he claims nothing through or under it; he had nothing to do with it except to draft it; the contract between him and the company is open to no objection; that contract was within the powers of the company; it was not champertous; an agreement that an attorney's fees shall be contingent is not champertous, unless he is to pay costs and expenses of litigation. Park Commissioner v. Coleman, 108 Ill. 591; Phillips v. S. P. Commissioners, 10 N. E. Rep. 230.

It is well established that, while courts are prompt to interfere, in advance, to restrain corporations from passing beyond the boundaries of their charters, yet they will enforce, against private corporations, organized for pecuniary gain, contracts, though *ultra vires*, of which they have received the benefit. Bradley v. Ballard, 55 Ill. 413; Chicago Building Society v. Crowell, 65 Ill. 453.

The only fair construction of the contract is that an appeal should be taken to the Supreme Court of the United States if the decision of the Circuit Court should be adverse. This necessarily follows from the language used in the beginning of the third clause, which is wholly ignored by appellant's counsel, namely: that appellee shall devote his services in defending the suit " to a final termination before the Supreme Court of the United States if it shall be necessary to establish the supposed rights of the defendants, or either of them."

GARY, J.  On the 5th day of August, 1885, the W. O. Tyler Paper Company (of which the appellant is the assignee in insolvency), as the party of the first part, and the appellee, as party of the second part, made this agreement:

" WHEREAS, the party of the first part desire to prosecute, for the defense, a suit now pending in the United States Circuit Court for the Northern District of Illinois, entitled The Hammerschlag Mnfg. Co. v. The F. W. Butler Paper Co. and George W. Bancroft, and of employing the party of the second part as their attorney therein.

" Now, therefore, the parties have agreed as follows:

" 1.   The party of the first part, in consideration of the promises and agreements hereinafter made, and the services of the party of the second part, agree to pay the party of the second part the sum of three thousand ($3,000) dollars as attorney fees in said suit, and also to pay all expenses of every kind incurred in said suit from the time the motion for preliminary injunction was granted to the determination thereof, including traveling expenses, witness fees, printing, costs of exhibits, and all expenses which are common to patent litigation.

" 2.   The party of the first part further agrees that, if at any time during the progress of said suit, it fails to advance the money necessary to pay the aforesaid expenses as they accrue, or notify the party of the second part of its intention not to further prosecute said suit, then the party of the first part agrees to pay the party of the second part the sum of fifty ($50) dollars for each and every day's service he may have rendered in said suit up to the date of said notice.

" 3.   The party of the second part, for and in consideration of the promises and agreements herein made, agrees to devote his professional services, and to the best of his abilities, in defending the aforesaid suit to a final termination before the Supreme Court of the United States, if necessary to establish the supposed rights of the aforesaid defendants, or either of them, and that he has no claim upon the aforesaid three thousand ($3,000) dollars (except as provided for in clause 2 of this agreement), until a decision shall have been rendered in the United States Circuit Court for the Northern District of Illinois, or the Supreme Court of the United States, by which the defendant, George W. Bancroft, has the right to manufacture paraffine waxed paper under his patent involved in said suit."

The appellant objects that this was an illegal, and therefore void, agreement, as being beyond the corporate powers of the company, and champertous.   Without discussion those objections are overruled.

The company failed in August, 1887, and the next month the United States Circuit Court for the Northern District of Illinois decided the case mentioned in the agreement adversely

to the interests of these parties. The appellant furnished no money for expenses; over $10,000 had already been expended; appellee had received no fees, and appellee filed his claim against the appellant for his *per diem*, under the second paragraph of the contract, which was allowed—247 days, $12,250.

The construction upon which that allowance was made was that the company was, under the third paragraph of the contract, bound to carry the case to the Supreme Court of the United States if the decision of the Circuit Court was adverse, or pay appellee, if he was ready and willing to perform on his part, $50 for every day he had been employed in the case. This construction is right, with the limitation that the *per diem* can not exceed the whole reward for success.

Besides the inconsistency of requiring a party to pay more for non-acceptance of performance of a contract than for performance itself, the third paragraph treats the *per diem* as a claim that might arise, under which appellee might be entitled to part, or all, of the $3,000. The words are "no claim upon the aforesaid three thousand dollars (except as provided for in clause 2 of this agreement)." If the *per diem* is a claim upon, it can not exceed the $3,000. If within twenty days after this opinion is filed, the appellee remits all above $3,000 of the sum allowed him, the judgment of the County Court for $3,000 will be affirmed; if not, it will be reversed; in either event, the appellant to recover his costs in this court.